**In re NORTH AMERICAN T.B.A. OF FLORIDA, INC., d/b/a Miami Parts and Spring, Inc., Debtor.**

**GENERAL MOTORS CORPORATION, Plaintiff,**

v.

**GLENFED FINANCIAL CORPORATION and North American T.B.A. of Florida, Inc., d/b/a Miami Parts and Spring, Inc., Defendants.**

**Bankruptcy No. 85–01144–BKC–AJC. Adv. No. 85–1088 BKC–AJC–A.**

United States Bankruptcy Court, S.D. Florida.

Aug. 7, 1987.

Matthew F. Minno, Miami, Fla., for General Motors Corp.

Stormie Stafford, Miami, Fla., for Glenfed Financial Corp.

Howard J. Berlin, Miami, Fla., for debtor.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

A. JAY CRISTOL, Bankruptcy Judge.

THIS CAUSE came before the Court on March 25, 1987, May 6, 1987 and July 22, 1987 for evidentiary hearings to determine the dollar value of GENERAL MOTORS CORPORATION's (hereinafter "GM") collateral in accordance with the Final Judgment entered by this court on June 9, 1986 and the Court has been fully advised in the premises.

The Court has determined the following facts from the evidence presented:

1. The analysis presented by GM traces to GLENFED FINANCIAL CORPORATION (hereinafter "GLENFED") receivables collected in the amount of $131,916.83 due to sales of GM parts by the debtor.

2. The total amount of $131,916.83 is to be reduced by $41,630.55. This lesser amount represents collections which predate the last check from the debtor to GM.

## CONCLUSIONS OF LAW

This case involved a great deal of time, effort, and preparation for all the litigants and the Court. In determining the amount of this Judgment the Court has carefully addressed several issues.

GM presented a very thorough and detailed analysis of the collections of proceeds by GLENFED. This analysis covered the period from November of 1984 through June of 1985 and presented clear and convincing evidence that GLENFED received $131,916.83 which was directly attributable to the sales of GM parts by the debtor.

GLENFED FINANCIAL CORP. argues that Fla.Stat. § 679.306(4)(d) limits the interest of GM to proceeds received within 10 days prior to the filing of the bankruptcy petition. The argument is based on the fact that proceeds of GM's collateral were deposited into an account containing funds other than the proceeds of GM's collateral, creating a commingled account under Fla. Stat. § 679.306(4)(d). The perfected security interest in proceeds in a commingled account is "limited to an amount not greater than the amount of any cash proceeds received by the Debtor within ten days before the institution of the insolvency proceedings...." Fla.Stat. § 679.306(4)(d)(2). GLENFED FINANCIAL CORP. cited authority from several jurisdictions supporting its position. The Court rejects the argument of GLENFED FINANCIAL CORP. and finds the operational statute to be Fla. Stat. § 679.306(4)(a).

The "Statement of Accounts Receivable" and the "Loan and Security Agreement" in evidence establish that proceeds from the sales of merchandise were deposited by GLENFED in a *separate deposit account* containing only proceeds. The checks received by the debtor were express mailed every day to GLENFED for deposit into this account. Initially, then, GM is thus entitled to the total amount of the proceeds which were traced to the sales of their product up to the amount of their proof of claim. This is in accordance with Fla.Stat. § 679.306(4)(a).

GLENFED FINANCIAL CORP. also argues that, as a matter of law, if the account balance of a customer of the Debtor is not reconciled to zero prior to the time at which payments made by the customer are claimed to be on account of specific invoices and collateral, the claimed payments cannot be attributed to an invoice that comes after a prior outstanding balance. GLENFED FINANCIAL CORP. additionally argues that when there remains a balance unpaid by the customer of the Debtor that is greater than the amount of payments claimed, and such balance cannot be attributed to collateral other than that for which proceeds are claimed, the proceeds claimed have not been sufficiently traced.

These arguments cannot withstand the scrutiny of the evidence presented. For example, during the hearing on July 22, 1987 the Court examined in detail the tracing presented by GM for the account of Hallett Pontiac in the amount of $3,043.05. This is one of the accounts GLENFED argues should be disregarded because it was not reconciled to zero. The Court finds that the payment amount of $5,478.16 is the exact total of 36 separate invoices all of various amounts. If any other invoices are compiled, the payment would not equal this exact amount. The Court is convinced that this establishes that the customer was paying the 36 invoices with its check. Further, GM established that of this $5,478.16 deposited by GLENFED, $3,043.05 was directly attributable to the sales of GM parts. This is only one example of the complete and thorough analysis presented.

GLENFED FINANCIAL CORP. also argues that it did not retain and use all of the proceeds sought by GENERAL MOTORS CORP. and should be liable only for the amount actually received by GLENFED FINANCIAL CORP. Under the Loan Agreements between GLENFED and the Debtor, once the Debtor's collections were deposited in an account held by GLENFED FINANCIAL CORP., GLENFED FINANCIAL CORP. immediately re-advanced 75 percent of the collections, reducing the loan amount by the remaining 75 percent. The Debtor, according to GLENFED, retained 75 percent of the proceeds to fund its business operations. Such advances continued until a point in April, 1985. GLENFED FINANCIAL CORP. received only 25 percent of the proceeds until such time as the advances stopped, and can be liable only for 25 percent of the proceeds. The Court did not accept the argument of GLENFED FINANCIAL CORP.

All of the proceeds traced were deposited by GLENFED. Clearly GLENFED had the use of these funds. GM also responds that there was no evidence presented as to the *amount* of any percentage of readvancements. Counsel for GM offered to proffer the further testimony of Ms. Charlock to establish that this arrangement was

not for 75 percent and payments were made by GLENFED to others besides the debtor. The Court does not have to hear testimony on this issue as it finds that GLENFED deposited these funds into their separate account and thereafter used them for their own benefit as they had planned. If GLENFED chose by contract to read-vance these funds it did so at the risk of another secured party's claim. GLENFED cannot by its own conduct avoid the rightful claims of a secured party.

Finally, GLENFED asserts that GM received payment for all of its inventory shipped to the Debtor through January. To support this, GLENFED attached to its "Post Trial Memorandum of Facts and Law" a check supplied by counsel for GM as representing the last payment from the Debtor to GM, dated February 27, 1985 from Miami Parts and Spring to AC Delco. GLENFED urges that the accompanying memo identifies the payment to be on account of all past due amounts through January 31, 1985. GM therefore has received full payment for all AC Delco inventory in the hands of the Debtor through January 31, 1987. The amounts claimed by GM must be reduced by $12,904.37 claimed for November and December, 1984 and January, 1985, and further reduced by February payments received on account of AC Delco parts received from the Debtor in January, 1985, or $28,726.18 received in the month of February. Therefore, GLENFED concludes that the claim of GM should be reduced by $41,630.55.

GM argues in response that there was no evidence presented as to which invoices this check paid. Further GM again offered to proffer the testimony of Ms. Charlock to establish that this payment on its face was a "past due amount" per a February 5, 1985 statement. Therefore, the check attached to the memorandum may have been paying invoices before the analysis of GM began. At the very least, the draft may not have paid invoices for January. Also, GM argued that the check is from the Barnett Bank in Naples and should not affect the security interest traced to GLENFED's separate account.

The Court agrees with GLENFED on this final issue and reduces the amount traced by GM by $41,630.55.

The total amount of the judgment in favor of GM has been established at $90,286.28. The Court reserves jurisdiction for the taxation of costs, interest and attorneys' fees if appropriate.